## DAVIS *v.* MEMPHIS CITY RY. CO.

*(Circuit Court, W. D. Tennessee.* February 6, 1885.)

1. CORPORATIONS—LIABILITY OF OFFICER OR DIRECTOR—FRAUDULENT SALARIES.
   If an officer holding or controlling a majority of the stock should pack a directory with his special friends, and they desert the interest of the company by granting an excessive salary to him, their action is fraudulent, and he cannot recover the salary in a suit at law. Mere error of judgment, however, by the directory, acting honestly in fixing a larger sum than prudence would justify, does not constitute a valid defense.

2. SAME SUBJECT—MALADMINISTRATION—COUNSEL FEES—DAMAGES—WRONGFUL EXPENDITURE OF CORPORATE FUNDS.
   Where a corporation, in a suit by its president for his salary, pleaded, by way of set-off, the wrongful expenditure of its funds for counsel fees, *held*, that although it was his duty to consult the directory before incurring the expense, if he acted for the interest of the company in good faith, and did only what the directory might reasonably, and should properly, have done for the benefit of the company, he is not liable in damages by way of set-off, or otherwise.

3. SAME SUBJECT—ADDITIONAL COUNSEL—PERSONAL SUIT—RATIFICATION BY DIRECTORY.
   Nor is he liable, although the corporation had a regular attorney, for the employment of additional counsel in a suit against him and the other directors, personally, for maladministration, if the suit involved also the interest of the corporation, and the expenditure was reasonable and beneficial to the company, particularly where the directors knew of the employment, and made no objection.

4. SAME SUBJECT—STOCKHOLDERS—FACTIONAL STRIFE—CHANGE OF MANAGEMENT—SUPERVISION OF COURTS.
   Where a factional strife among the stockholders is ended by a compromise, and the majority changes, a court will not, on a suit by the president for his salary, undertake to review the merits of that litigation and apply it as a test to the conduct of the president whether his alliance of the company with the one faction or the other was for its best interest or not. That matter is within the reasonable and honest discretion of the directory, and the courts will not supervise it by such a proceeding.

5. SAME SUBJECT—SICKNESS OF OFFICER.
   The fact that an officer is absent on account of sickness is not a defense against his claim for salary, if he procures the proper discharge of his duties by another officer authorized to act in his absence, and there be no injury to the company by reason of the absence.

6. NEW TRIAL—WEIGHT OF EVIDENCE.
   While a court will protect the parties against improper verdicts, it will not impair the right of trial by jury under the disguise of determining whether the verdict is against the weight of the evidence.

Motion for New Trial.

The suit was for $1,650, balance due Davis for his salary at the time he resigned from the company and turned the management over to the new parties who purchased his interest. The defense was that Davis had fraudulently procured the directors to fix his salary at an excessive sum, and that he had paid large sums of money, amounting to over $2,000, to Humes & Poston, as attorneys in the chancery case of *Bills* v. *Davis,* and the other directors, for a maladministration of the affairs of the company; the contention being that it was a suit against Davis, Barrett, and others, individually, in which the com-

pany had no interest. There were also other sums claimed as a set-off for fees paid these attorneys, of which the jury allowed, as set-off, a part paid in a litigation to defeat the forfeiture of the Citizens' Railroad Company, a rival corporation.

The evidence was that Davis owned a very large majority of the stock, and all the other directors were small holders of stock purchased of him to qualify them as directors. He had been also president of a bank, during which time the vice-president of the railway company had received a salary, and there was also a purchasing agent, but, when the plaintiff retired from the bank, the salary of the railway presidency was increased, and the duties of purchasing agent added to the presidency; but the vice-president's salary was reduced, and by the changes there was a reduction of the aggregate salaries to a considerable amount, notwithstanding the large increase in that of the president. Proof was offered to show that, notwithstanding the reduction, the salary was excessive; that it was established to furnish Davis with an income; that he discharged the duties inefficiently and negligently, and managed the affairs of the company badly. He met this by proof offered to show to the contrary of all this.

The chancery suit of Bills was one by a stockholder, to hold the directors personally liable for maladministration, and resulted in a report of the master charging them each with a very large, personal liability. The chancellor rendered an opinion, also holding them to a large liability, but no decree was entered, because Davis had bought out the plaintiff in that suit, and one of the directors, who had continued the litigation against the others on a cross-bill, being also charged by the chancellor with a large personal liability, compromised with Davis after the opinion was filed; and the matter was arranged by all the stockholders joining in the compromise. Subsequently, Davis sold out part of his interest, gave up the control, and ultimately left the company altogether. In the Bills suit the directory were enjoined from issuing $200,000 of the bonds of the company provided to pay its floating debt and to make improvements, and a receiver was demanded. The receiver was refused, and the injunction modified to allow the directory to issue one-half the bonds, the other being enjoined. There was no office of attorney, but the directors each year, by resolution, elected or employed a regular attorney for the company, and one was so employed at the time of the expenditures for additional counsel.

The court, (HAMMOND, J.,) among other things, charged the jury as follows:

"Undoubtedly the defendant company had a right to demand that the directors should fix the salary with sole reference to the interest of the company, and without any reference to the selfish interests of the incumbent. His private interests were entitled to no consideration at his hands in acting in his capacity as a director, and to none at the hands of the other directors. His interest required, of course, that he should receive as much as the company would pay, and its interest demanded that the president should be paid

as little as was consistent with the benefit of securing the services of a first-class and efficient man. This the directors had a right to secure, and to pay for such services a fair and reasonable compensation. Nor can they be held guilty of a fraud because of a mere error of judgment on their part. If, acting honestly and in good faith to secure what they believed to be the best interest of the company, they fixed the salary at too high a figure, as now appears from the proof,—if it does so appear to you,—it is none the less binding on the company, for that would be a mere error of judgment, and you should answer the first question put to you in the negative. But if you believe from the proof that the plaintiff, Davis, being the controlling stockholder, with absolute power to elect the board by a vote of his stock, packed the directory with his especial friends, who were ready and willing to do his bidding, and that he and they deserted the interest of the company, and, for his selfish benefit, fixed a salary that was beyond the sum it should have been, that action was fraudulent, and you should answer the first question submitted to you in the affirmative."

On the set-off the court charged the jury that the president had the right to employ additional counsel to represent the company in any litigation in which it was interested, although it had regular attorneys, provided the employment was an honest exercise of reasonable judgment, and not a mere pretext to give fees to his friends or to pay his own counsel out of the money of the company; the general principle being that, in all he or the directors do, the sole interest of the company should be the guide, and that they shall not use the funds of the company for their own benefit, even though they may own or control the great majority of the stock. The proof was that Davis was absent, sick, for about two months of the time sued for, but the vice-president agreed to and did act for him, and no injury to the company was shown. The court charged the jury on this point that, in the absence of any injury from the absence, it was, under the circumstances, immaterial; that it would be a harsh rule to deprive an officer of a corporation of salary during sickness, if he guarded against injury by securing the services of the very officer elected to act in his absence.

The jury, under the instructions of the court, returned a special verdict, on issues agreed upon by the counsel, as follows:

(1) "Was the action of the board of directors, in fixing the salary of the plaintiff as president of the defendant corporation at $3,600 per annum, done fraudulently?" *Answer of jury.* No.

(2) "Without reference to the contract, what were the services of the plaintiff worth to the defendant during the time here sued for?" *Answer of the jury.* $1,650.

(3) "Did the plaintiff perform the duties of president and purchasing agent of the defendant during the time for which he has here sued?" *Answer of the jury.* Yes.

(4) "How much of the defendant's money, if any, did the plaintiff cause to be paid to Humes & Poston, W. Y. C. Humes, and to W. Y. C. Humes & L. W. Humes for his own benefit, and here you will set out specifically each sum you may find to have been so paid?" *Answer of the jury.* Citizens' Railroad, $250; to Humes for Turner, $35; total, $285.

(5) "Should either party be allowed interest upon such sum as may be due from one to the other?" *Answer of the jury.* No.

On this special verdict the judgment for the plaintiff would be $1,365, the issues all being found in his favor, except the set-off allowed by the jury to the extent of $285.

*George Gillham,* (*John D. Martin* with him,) for plaintiff.

*Taylor & Carroll,* for defendant.

HAMMOND, J. The only ground for a new trial, which is pressed with serious confidence by the counsel for the defendant, is the error assigned in charging the jury that the president of the company had authority to employ additional counsel in the litigation against the company, especially in the Bills case. It is frankly conceded, as it must be, that, as between the attorneys employed and the company, the president might bind the corporation to the employment without any contract under seal, or other formal action, by the directory. *Bank of Columbia* v. *Patterson,* 7 Cranch, 299; *Osborn* v. *Bank,* 9 Wheat. 738; *Alexandria Canal Co.* v. *Swann,* 5 How. 83, 89; Weeks, Attys. 333, § 190; Boone, Corp. § 144; *Memphis* v. *Adams,* 9 Heisk. 518.

But it is insisted that, as between the president himself and the company, in a suit for damages, or where his wrongful use of the money of the corporation is challenged, as by this plea of set-off, the rule of decision is different, and that his action must be measured alone by his powers under the charter and by-laws. It is argued that the charter and by-laws of the company provide a directory to manage its affairs, and an executive committee; that there were monthly meetings, and power in him, as president, to call special meetings when occasion required. Unquestionably, the plaintiff should have taken the course indicated by this argument, particularly under the circumstances of that Bills case, and it is never safe for a president or other officer of a corporation to assume the responsibility that he did, except in an emergency—which did not exist in this case—that renders it unwise to delay action until the corporate management can be consulted and its judgment invoked. He makes himself liable for damages if he does so act without corporate authority. *Stokes* v. *New Jersey Pottery Co.* 46 N. J. Law; S. C. 24 Amer. Law Reg. 75. He is not, however, liable, unless his action results in injury to the company; and the courts do not proceed upon any theory of punishment for not consulting the corporate management. When the question arises, either in an action for damages or by plea of set-off, the law will not mulct the president in damages or withhold what he has justly earned, simply because he has not pursued the charter and by-laws. If he did only what the directory might and should properly do, and his action has resulted beneficially and not injuriously, why should he be liable for damages? At most, the damage could be only nominal to vindicate the law, and certainly he should not be made to pay where there was no injury to the company. Now, this is precisely the question the court submitted to the jury, and it approves their verdict. They were told distinctly that, if Davis was using the money

for the fraudulent purpose of paying his own counsel, in a litigation in which the company had no interest, or if it was an unwise, wasteful, and unreasonable use of the money, the defendant's set-off should be allowed. It was a question alone for the jury, and their decision should be final.

On a motion for a new trial, the court cannot set aside the verdict of a jury because it does not like it, or would have found the facts differently. It will protect the parties against misconduct or prejudice on the part of the jury, but will not usurp its function, under the disguise of determining whether the verdict is against the weight of the testimony. *Kirkpatrick* v. *Adams*, 20 FED. REP. 287. But the court is satisfied with this verdict, and does not think it contrary to the evidence. There was a factional strife between the minority and majority stockholders. The minority sued the directory for damages for maladministration. One of the directors, Barrett, joined with the plaintiffs in that case against his co-directors. The Davis faction represented the majority; the Barrett faction, the minority. Davis bought the Bills' stock, and Barrett continued the litigation with a cross-bill. The learned chancellor decreed against the directors, including Barrett himself, for large personal liabilities, and thereupon the parties, as they had a right to do, representing the whole body of the stockholders, compromised that litigation without entering a decree. It may be very doubtful, since the parties to that suit represented the entire stock of the company, whether it is precisely correct to say that the company—that entity we call the corporation—had any further or separate interests in the controversy. Perhaps it did in the interest of creditors; but, at all events, in such a struggle it would have been wiser if the directory had employed counsel to represent the company who were wholly independent of either faction. Still, while this was not done, and both the regular and associate counsel seem to have also represented the Davis faction in the litigation, the court cannot see that, on the proof, this resulted in any injury to the creditors, the only outside parties to the contest, or to the corporation itself; and, doubtless, the jury took the same view of it. The argument that it did so result in its ultimate analysis comes to this: that the best interest of the company laid in the direction of an alliance with the Barrett faction, and not the Davis faction, and that it is by this test we must determine whether the money paid to Humes & Poston was paid in the interest of the company; and this is the contention actually made before the jury and on this motion for a new trial.

There are several answers to this: *First.* While it is true the chief object of that litigation was to hold the directors to a personal liability, it was not alone against Davis that this remedy was sought, but as much against Barrett himself. And, in fact, the chancellor's opinion held him to a large liability, and but for the compromise he would have had it to pay the same as the rest. An alliance with

him, therefore, was subject to the same objection as the other: that the company was acting as the partisan of a particular stockholder. *Secondly.* Davis and his friends owned a majority of the stock, and were in possession of the control, rightfully so. It belonged to the directory, acting by its own majority and under its responsibility, in this matter as in others, to determine where the best interest of the company lay, and to shape its corporate part in the litigation accordingly. This discretion belonged to it under the charter, and the courts cannot control it or supervise it. 3 Pom. Eq. §§ 1088–1097, and notes. Surely, not in this suit and on the issues we have here could we be required to exercise that function if it exists anywhere. *Lastly.* We have nothing to do with the test suggested. We cannot be required to overhaul the record in that acrimonious and immense litigation, so important in its character to all concerned, to determine whether the corporate action should have allied the corporation with the one faction or the other. Naturally, that alliance would go to the majority rather than the minority; and, now that the control has changed, we cannot go back and undertake to determine whether it should not have been made with the rival faction in the interest of the entire company. If so, the entire company must suffer for the error in judgment of the directory. It is useless to argue now that the minority were right in the litigation and the majority wrong. It has been ended, and the parties have compromised it. It may have been better, as is now argued, to have had a receiver, as the minority wanted, and to have sustained the injunction against the directory, as the minority wished it, but the able chancellor did not think so, and, if we were willing to review his action, we have not the power, under the circumstances, to do it. The creditors are the only parties who would have a right to complain, and now that the stockholders *inter sese* have compromised that litigation, they, being able to take care of themselves, are not here making complaint, if indeed they could make it anywhere.

It has constantly suggested itself to the court, since this question was first agitated in the case, that the last consideration was an end of this branch of the defense, and that the compromise between the stock-holders, after Chancellor MORGAN's opinion, closed all questions arising out of the controversy, and that the company's liability to pay its share of the attorney's fees could be no longer mooted; yet the court submitted the question to the jury as if that compromise had never been made, in deference to the very cogent reasoning of the defendant's counsel that Davis' whole conduct about this business was open to investigation in this suit for his salary. But the only proper question was that submitted to the jury; and, inasmuch as it abundantly appeared from the proof that the minority had not confined themselves, in their litigation, to seeking a personal liability from the directors for maladministration, but had gone further and involved the company itself, by enjoining the management from issuing bonds.

to pay its debts, and for other purposes of corporate enterprise, and by applying for a receiver to oust that management entirely, there could be no doubt of the company's liability to pay the lawyers for preventing those things, useful though we may now think them to have been if we think with the then minority, or disastrous as they would have been if we think with the then majority.

It was their own fault thus to involve the company in the litigation, and the minority cannot complain at the payment of the fees. True, the company was a necessary party in any view, but would have been only nominally a party if the litigation had been confined to its personal features against the directors, and in that event, of course, Davis would not have been authorized to pay counsel fees on its account. But it was not so confined, and the jury decided correctly. A question has been made that the company already had counsel in its regular employment; but that was also submitted to the jury, whether under the circumstances of the magnitude of the case and its character, it was reasonable to associate counsel with the regular attorneys. The jury approved it, and so does the court. Again, the whole body of directors were defendants, and must have known of this employment of additional counsel, and who were representing the company. A few weeks after the suit was brought, there were some changes in the directory, and two of the new directors testified they knew of the employment of Humes & Poston,—one that he advised it, and the other that he approved it. This was acquiescence and ratification, and now, the fact that there has been an entire change in the control of the company does not confer the right to revoke that corporate action by disapproval and refusal to pay the compensation of the counsel.

The motion for a new trial must be overruled, and a judgment entered on the special verdict for the plaintiff. So ordered.