Attalla Iron Ore Co. v. Virginia I., C. & C. Co.

ATTALLA IRON ORE CO. *v.* VIRGINIA IRON, COAL & COKE CO.

(*Knoxville.*   September Term, 1903.)

1.  **CORPORATIONS.**  Contract made on behalf of a corporation
    by its managing officials with another corporation in which
    they own a majority of the stock will be annulled in equity,
    when.

    Where the two managing officials of an existing corporation and
    a third person charter and organize a new corporation, in which
    the two officials were to control a majority of its stock, but
    whose identification therewith an effort was made to conceal,
    for the purpose of causing a contract to be made by and be-
    tween the two corporations; and after the creation of the new
    corporation as proposed, the said officials of the existing cor-
    poration, and on its behalf, but without the knowledge of its
    directors and stockholders, entered into a contract with the
    new corporation, such contract, without regard as to whether
    it is favorable or unfavorable to the existing corporation, will
    be annulled by the chancery court upon seasonable application.
    But the contract in this case was most oppressive.

    Cases cited and distinguished: Gaslight Co. Cases, 105 Tenn.,
    268; Thomas v. Railroad, 109 U. S., 522; Oil Co. v. Marbury, 91
    U. S., 587; Barr v. Railroad, 125 N. Y., 263; Barnes v. Brown,
    80 N. Y., 527; Munson v. Railroad, 103 N. Y., 58; Wardell v.
    Railroad, 103 U. S., 651.

    Cases cited and approved:  Wardell v. Railroad, 103 U. S , 651;
    Railroad v. Magnay, 25 Beav., 586; Benson v. Heathhorne, 1
    Young & C., 326; Railroad v. Dewey, 14 Mich., 477; Railroad v.
    Poor, 59 Me., 277; Drury v. Cross, 7 Wall., 299; Hall v. Turn-
    pike Co., 87 Am Dec., 75.

Attalla Iron Ore Co. v. Virginia I., C. & C. Co.

**2. SAME.** Same. Third party in new corporation cannot rightfully protest against such rule.

The third person in the new corporation cannot rightfully protest against the application of the rule in the foregoing headnote; because having participated in the wrong with the managing officials of the existing corporation, he should not be allowed to derive profit from it. (*Post, p.* 537.)

Cases cited and approved: Hall v. Turnpike Co., 87 Am. Dec., 75.

**3. SAME.** Same. Such contract is voidable, not void.

Such contract as that stated in the first headnote is not void, but only voidable; and notwithstanding the vice which tainted its origin, it may be subsequently validated. (*Post, p.* 534.)

Cases cited and approved: Thomas v. Railroad, 109 U. S., 522; Oil Co. v. Marbury, 91 U. S., 587; Barr v. Railroad, 125 N. Y., 263; Barnes v. Brown, 80 N. Y., 527.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. —T. M. McCONNELL, Chancellor.

CHAMBLISS & CHAMBLISS and SNODGRASS & LATIMORE, for complainant.

CURTIN & SHELTON and JOS. L. KELLEY, for defendant.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The complainant is a corporation operating an iron ore mine in the State of Alabama, while the defendant is a chartered company with iron furnaces in the State of Tennessee and elsewhere.

The present bill was filed by complainant to recover damages from the defendant corporation, which it alleges are sustained from a breach of a contract claimed to have been entered into between the two corporations on the ninth of October, 1899, by which the complainant bound itself to deliver to the defendant 100,000 tons of iron ore of a certain degree of metallic richness at the rate of 4,000 or 5,000 tons a month f. o. b. at Attalla, Ala., to be paid for by the defendant at the fixed rate of $1.25 per ton on the twentieth of each month for all the deliveries of the preceding month. It is alleged in the bill that, after receiving 20,000 tons of iron ore under the provisions of the contract, the defendant attempted to repudiate it by a formal vote of its directors on the tenth of June, 1900, since which time it has declined to regard it as a binding obligation; and has declined to receive the remaining 80,000 tons of iron ore which complainant was entitled to deliver and receive the stipulated pay therefor. The damages claimed for this breach amounted to $40,000, without interest.

An answer and cross bill were filed by the defendant corporation, in which a denial was made of any liability on the alleged contract, among other grounds, because it was made by certain officers of the defendant, to whom

was delegated the duty of managing its affairs in the interest of its stockholders and creditors, and who, in disregard of this duty, and without the knowledge or consent of their principal, organized, with one Bueck, the complainant corporation, with the purpose of making the contract in question and of selling iron ore to the defendant at a large pecuniary profit to themselves. It was also averred that immediately upon acquiring knowledge of this agreement or alleged contract, it was disaffirmed by the defendant, and notice of such action was at once communicated to the complainant.

In the cross bill the defendant asked for a dismissal of the original bill and for a decree annulling the contract set up therein.

Upon the trial of the case the bill of complainant was dismissed, and relief was granted in accordance with the prayer of the cross bill. This decree has been affirmed by the court of chancery appeals, and the cause is now before us for review. The facts bearing on this controversy, as found by that court, are that in the year 1899 the defendant owned and controlled a number of iron furnaces in this and other States, and in view of the demand for iron products made efforts to secure sufficiency of iron ore to keep their furnaces running. With this view George L. Carter, president, and M. D. Chapman, vice president, of the defendant corporation, who had been placed in control of the operations of these furnaces, opened negotiations with one Bueck looking to the purchase by him for their corporation of 200,000

tons of iron ore. Under authority received from them, Bueck made a canvass of the iron ore producing territory, and found as available for furnishing the crude product desirable property lying at Attalla, Ala., upon which he took an option, upon the assumption, from his previous negotiations with the parties named, that the defendant company would pay for ore $1.25 per ton. After securing this option, he visited Bristol, in this State, where the headquarters of this corporation seemed to be, and induced Carter and Chapman to become interested with him; and it was there and then agreed between these parties that a corporation should be organized by the three to own and control the Attalla property, and that the defendant corporation should take iron ore from it. The result was the chartering of the complainant company, its capitalization at $100,000, and the conveyance to it of the property.

In other words, summing up the transaction, it is found as a fact by the court of chancery appeals "that when the Attalla mining property was taken under this option it was understood and agreed between these parties that the complainant corporation should be organized; that Carter and Chapman should be interested in it, and should in fact control a majority of its stock; and that the contract sued on in this case should be made, and the profits resulting from the sale of the ore thereunder be divided between Carter, Chapman, and Bueck in proportion to their respective interests."

As significant of doubt in the minds of these parties

as to whether such a transaction would bear scrutiny, and, as we think, with the evident purpose of concealing the identification of Carter and Chapman with it, the whole of the capital stock of this new company was issued to Bueck, who caused $30,000 to be placed in the name of the father-in-law of Carter, but for the latter's use, and $30,000 was delivered to Chapman.

It is further disclosed that in these preliminary negotiations Carter and Chapman proposed to commit the defendant company to an obligation to take from the new corporation 200,000 tons of iron ore at $1.25 per ton; but when they came subsequently to reduce the agreement to writing, for some undisclosed reason the amount was limited to 100,000 tons.

This was all done without the knowledge of the board of directors of the company. Disclosure of the circumstances under which this transaction took place and the interest in it of the parties to whom had been committed the management of the interests of the defendant was made months afterwards, and then was by it promptly repudiated. The defendant has paid for all the iron ore' which it received, and the case therefore does not fall within the rule of *Thomas* v. *Brownville, Ft. K. & P. R. Co.*, 109 U. S., 522, 3 Sup. Ct., 315, 27 L. Ed., 1018. So that, if complainant's bill can be maintained, it must be upon the ground that its officers, Carter and Chapman, made with the corporation, which, by reason of their controlling interest, they dominated, a binding agreement, the breach of which by the defendant is actionable.

This is unlike the *New Memphis Gas Light Co. Case*, 105 Tenn., 268, 60 S. W., 206, 80 Am. St. Rep., 880, in which it was held that directors of a corporation are not forbidden, by reason of their position, from dealing with it, under proper circumstances, with the view of securing indemnity to themselves as accommodation indorsers of the company's paper. In such a case they are permitted, while the corporation is a going concern, expecting to continue its business, to secure themselves against possible loss from such an indorsement. Even in such a case as that this court said the transaction will invite the closest investigation, and it must be characterized by the utmost good faith.

To the contrary, the present is a case where two persons occupying positions of trust as the managing officials of one corporation enter into a secret agreement with a third party to form a new corporation, in which they are to have a large controlling interest, with the view of binding their principal to the making of a large contract for iron ore at the then highest market price, when the delivery of this ore may extend through a period of more than two years, the profits of the transaction to be divided between themselves and this third party; and this in the face of feverish conditions of the market.

If Carter and Chapman had made this contract in the name of the defendant company with themselves and Bueck as individuals, or with the latter nominally, but really representing them to the extent of a two-

thirds interest in it, no one would for a moment contend that their principal, on discovering their connection with it, could not repudiate it. Hiding behind the thin disguise of an easily procured charter, which they have obtained for a company practically controlled by them, such an arrangement should not and cannot be given greater legitimacy. At the best we think it is simply an effort by these agents to bind their principal by an unrevealed arrangement to purchase iron ore from themselves and their partner.

It is true the weight of the authorities is that such a contract is not void, but only voidable; and, notwithstanding the vice which tainted its origin, it may be subsequently validated. Among the cases so holding are *Thomas* v. *Brownville, Ft. K. & P. R. Co.*, supra; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S., 587, 23 L. Ed., 328; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y., 263, 26 N. E., 145; *Barnes* v. *Brown*, 80 N. Y., 527. But we are dealing now with a case where an effort is made to enforce by recovery for its breach a contract so affected in its origin, and which has never been in any way validated, either expressly or indirectly, by the retention of its fruits, in whole or in part. We think to aid in the enforcement of such contract would be repugnant to the great rule of law which finds destructive voice in all contracts made by a trustee or fiduciary in which he is personally interested, and which can only be removed at the election of the party he represents. *Munson* v. *Railroad*, 103 N. Y., 58, 8 N. E., 355.

No apter expression of this rule of law can be found than in the opinion of the supreme court of the United States in the case of *Wardell* v. *U. P. R. R. Co.*, 103 U. S., 651, 26 L. Ed., 509. In that case, as in the present, there was a contract made by the executive committee of the railroad company, of which the president was one, and not by the board of directors, with one Wardell and another, to furnish coal to the company for a period of fifteen years upon terms exceedingly favorable to Wardell and his associates. Soon after a corporation was organized, and the majority of its stock was taken by six directors of the railroad company, one of these also being the president. The coal contract was assigned to this corporation without consideration. And this new corporation continued for several years to execute its provisions, when it was abruptly terminated by the railroad company, and forced possession was taken under its order of the books, mines, etc., of that corporation. Wardell filed his bill to obtain a relief under the contract. The United States circuit court held that the contract was a fraud upon the railroad company, and that, apart from it, the complainant was entitled to some compensation for his time, etc., and a return of the money actually invested by him, the fruit of which was seized by the railroad; to this extent applying the rule in *Thomas* v. *Brownville, Ft. K. & P. R. Co.*, supra. The supreme court, in disposing of the case, said that the evidence justified the conclusion of the court below as to the nature of this contract, and

affirmed its decree in all respects. In disposing of the question we are now considering, that court said: "The law . . . will also condemn the transactions of the party in his own behalf when in respect to the matter concerned he is the agent of others, and will relieve against them whenever their enforcement is seasonably resisted. Directors of corporations and all persons who stand in a fiduciary relation to other parties and are clothed with the power to act for them are subject to this rule. They are not permitted to occupy a position which will conflict with the interest of the parties they represent and are bound to protect. They cannot, as agents or directors, enter into nor authorize contracts in behalf of those for whom they are appointed to act, and then personally participate in the benefits. Hence all arrangements by directors of a railroad company to secure an advantage to themselves at its expense by the formation of a new company as an auxiliary to the original one, with an understanding that they, or some of them, shall take stock in it, and then that valuable contracts shall be given to it, in the profits of which they, as stockholders in the new company, are to share, are so many unlawful devices to enrich themselves to the detriment of the stockholders and creditors of the original company, and will be condemned whenever properly brought before the courts for consideration. *Railroad* v. *Magnay,* 25 Beav., 586; *Benson* v. *Heathhorne,* 1 Young & C., 326; *Railroad* v. *Dewey,* 14 Mich., 477; *Railroad* v. *Poor,* 59 Me., 277; and *Drury* v. *Cross,* 7 Wall., 299 [19 L. Ed. 40]."

Attalla Iron Ore Co. v. Virginia I., C. & C. Co.

What is true with regard to the agents of a corporation is equally so with regard to the agents of any other company or individual. While the rule was applied to persons occupying a fiduciary relation to a railroad corporation, still it is a general one that applies to all agents whatever may be the character of the principal.

Nor can Bueck or third party in control of the complainant corporation rightfully protest against the application of this rule to the contract in question; for, where a stranger participates with the officer of a corporation in the commission of an act of manifest bad faith or breach of duty to it, he, equally with the officers, commits a wrong, and ought not to be allowed to derive profit from it. *Hall* v. *Auburn Turnpike Co.*, 87 Am. Dec., 75.

The principle here announced authorizes the annulment of a contract such as the present one, if seasonably challenged, without regard to whether it is favorable or unfavorable to the complaining principal. But that the contract here sued on was most oppressive is abundantly shown. For nine months after its date it is found that iron ore which was to be furnished under this contract at the highest market price prevailing at its date had dropped in price to seventy-five cents per ton, and yet the defendant was confronted by a demand that it should continue to receive this article during the existence of the contract at the price therein stipulated.

Without further pursuit of this question, we are content to affirm the decree of the court of chancery appeals, and this is accordingly ordered.