## CENTRAL BUS LINES, Inc. v. HAMILTON NAT. BANK et al.—239 S. W. (2d) 583.

Eastern Section.

Petition for Certiorari denied by Supreme Court, March 3, 1951.

McAllen Foutch, of Smithville, for appellant.

Williams, Cummings & West, of Nashville, Chambliss, Chambliss & Brown, of Chattanooga, for appellee.

McAMIS, J. By his appeal, J. E. Evins, defendant below, seeks a reversal of a decree of the Chancery Court of Hamilton County requiring him to convey to complainant, Central Bus Lines, Inc., a brick business building on Chestnut Street in Chattanooga. The case turns on whether or not, as the Chancellor held, appellant holds title as a constructive Trustee for Central Bus Lines, Inc. References will be to the parties by name or according to their status in the Chancery Court.

Central Bus Lines, Inc., was formed July 31, 1947, by the merger of two Tennessee corporations known as Consolidated Bus Lines, Inc., and Central Bus Lines, Inc. Complainant succeeded to all the rights of the two corporations out of which it was formed. On March 31, 1943, defendant J. E. Evins owned substantially all of the stock of Consolidated Bus Lines, Inc. As President and Manager, he had been in complete charge of its affairs for 25 years. On that date he purchased from Hamilton National Bank, a nominal party defendant herein, the business building here in dispute, giving his personal check to the Bank, as grantor, for $8,500.00. For some

reason, not satisfactorily explained, the deed was never placed of record in Hamilton County.

On April 13, 1943, less than 2 weeks after he had acquired title, defendant, upon representing that he had purchased some property in Chattanooga for which he desired to be "reimbursed", obtained the Corporation's check for $8,500.00 marked "for Chatt. gar." On or about the same date, the bookkeeper of the Corporation set the property up on the books of the Corporation at $1,500.00 for the lot and $7,000.00 for the building and each year thereafter took depreciation on the building in Federal Income Tax returns. Before he severed his connection the following year, these reports were signed and sworn to by defendant.

The property so stood upon the books of the Corporation in the fall of 1943 when defendant entered into negotiations with one Van Hooser and associates for a sale of the stock of Consolidated Bus Lines, Inc. On December 31, 1943, defendant entered into a written contract with Van Hooser for a sale of all of his stock in which he warranted that neither he nor any member of his family had any contract of any kind with the Corporation except as shown in the contract. No reference was made to a lease contract covering the property here in question. Mr. Van Hooser testified that the contract was closed late at night and that he did not require defendant to execute a deed to the Corporation relying upon his promise to execute such a deed promptly. Mr. Van Hooser further testified that he had repeated conversations with defendant thereafter and some correspondence and that each time he discussed the matter orally with defendant he would state that the deed was lost and that it would require some time for him to execute the papers. Although he testified at length as a

witness defendant makes no denial of these promises. The bill was filed in the present case January 21, 1948.

It is the theory and contention of defendant that he purchased the property in his own right and with his own funds without any intention of having title taken in the name of the Corporation and that he, as owner, leased the premises to the Corporation at $125.00 per month which was paid in advance for "about 60 or 70 months", by the check of April 13, 1943. He admits there was no directors' meeting ratifying the lease and, when questioned on cross-examination as to upkeep, taxes and insurance, stated that these expenses were to be paid by the Corporation. The other directors were his wife and son, neither of whom were introduced as witnesses to substantiate defendant's claim that there was a "minute" made of the transaction in the Corporation's minute book. As we understand, the minute entry to which the witness referred was made to reflect the action of an executive committee, since it was previously stated by the witness that no directors' meeting was held. The minute books of the Corporation failed to indicate action by either body ratifying the alleged lease. Defendant refused to state whether he had taken this transaction into account in his personal income tax returns but admitted that he had signed reports to the Interstate Commerce Commission which showed the premises owned and not leased by the Corporation, offering as his explanation that such reports were made out by subordinate officers and employees of the Corporation and contained detailed matter with which he was not familiar.

By claiming a purchase by himself and a subsequent leasing of the property to the Corporation, defendant places himself in the position of acquiring, while acting in a fiduciary capacity, a contract from the Cor-

poration the end result of which would be ownership of the property at the end of 5 years without outlay to himself. We agree with the Chancellor that, under such circumstances, equity should raise a trust in favor of the Corporation.

Corporate officers stand in a fiduciary relation to the corporation and while occupying such position they must act in the utmost good faith. They are not permitted to deal with the corporation or its assets for their own private gain and cannot deal for themselves and for the corporation at one and the same time even though they own or control the great majority of the stock. If they do so act in violation of their trust they must account for any profits made by use of corporate assets. Deaderick v. Bank of Commerce, 100 Tenn. 457, 45 S. W. 786; Steward Mfg. Co. v. Steward, 109 Tenn. 288, 70 S. W. 808; Attalla Iron Ore Co. v. Virginia Iron, Coal & Coke Co., 111 Tenn. 527, 77 S. W. 774; Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S. W. (2d) 344; Davis v. Memphis City Ry. Co., C. C., 22 F. 883.

In Covert v. Nashville, C. & St. L. Railway, 186 Tenn. 142, 152, 208 S. W. (2d) 1008, 1012, 1 A. L. R. (2d) 154, the court, speaking through Mr. Justice Burnett, enunciated a clear-cut general test for determining the existence of a constructive trust:

''Such a trust 'arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy'.''

The author of that opinion, while a member of this court, approved the definition of a constructive trust by Cardozo, J., in Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 389, 122 N. E. 378, 380, as "the formula through which the conscience of equity finds expression" and quoted from the Cardozo opinion as follows: "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." Fehn v. Scheickling, 26 Tenn. App. 608, 617, 175 S. W. (2d) 37, 40

While the existence of a fiduciary relationship does not in itself give rise to a constructive trust, it is frequently an important consideration in holding that an abuse of confidence rendering the retention of property by one person unconscionable against another is a proper predicate for granting equitable relief in the form of the declaration and enforcement of a constructive trust. McNeill v. Dobson-Bainbridge Realty Co., Inc., 184 Tenn. 99, 195 S. W. (2d) 626; McDonald v. Miller, 73 N. D. 474, 16 N. W. (2d) 270, 156 A. L. R. 1328; Moses v. Moses, 140 N. J. Eq. 575, 53 A. (2d) 805, 173 A. L. R. 273; 54 Am. Jur. 173.

As has been seen, our cases hold without exception that corporate officers are chargeable as fiduciaries with any profit made with funds of the corporation or in unauthorized dealings with themselves. It follows, we think, that they hold such profits and assets as constructive trustees for the corporation, Diedrick v. Helm, 217 Minn. 483, 14 N. W. (2d) 913, 153 A. L. R. 649; and are liable to account to its stockholders past or present.

Bennett v. Havelock Electric Light & P. Co., 18 Ann. Cas. 354, Annotation 359. The profit in this case, if defendant's plan be carried out, would be the premises which complainant here claims and the proper relief is to decree the property to it.

We find without merit the further insistence that the deed created an estate by the entirety. The language "by the entirety" does appear after defendant's name but his wife's name appears nowhere as a grantee. No effort is made to reform the deed and, in fact, Mrs. Evins is not a party to the suit.

We find no error and the judgment is affirmed with costs to appellant and surety. The cause will be remanded for enforcement of the decree.

Hale and Howard, JJ., concur.