WILLIAM S. GILLESPIE and wife, MRS. LYSSA D. GILLESPIE, Complainants-Appellants, v. MRS. JOHN M. BRANHAM et al., Defendants-Appellees. —337 S. W. (2d) 689.

Middle Section.   August 28, 1959.

Certiorari Denied by Supreme Court December 12, 1959.

White, Gullett, Phillips & Steele, Nashville, for appellants.

Hofstetter & Hofstetter, Nashville, for appellees.

HICKERSON, J.   William S. Gillespie and wife, Mrs. Lyssa D. Gillespie, brought this suit against Mrs. John M. Branham and others, individually and as officers and directors of Nashville Dental, Inc., herein called corporation, to set aside transfers of property by the corporation to Mrs. John M. Branham individually, she being the President of the corporation; and to adjust the equities between the parties growing out of such transfers.   It was the theory of complainants that the transfers were void because Mrs. Branham, as President of the corporation, made the transfers to herself, individually.   Such transactions were void because she was acting as seller and purchaser at the same time when she was acting in a fiduciary capacity as President of the corporation and as such was dealing with herself individually in trust property; and that such dealing was not permitted under the laws of Tennessee.

Defendants stated, by answer, that the transfers were made for the best interest of the corporation; and that they were valid and binding.

The Chancellor sustained the defense and dismissed the bill.   Complainants appealed to this Court and have assigned errors which we shall not consider separately.

There is one determinative question before this Court: May the President of a corporation, who owns controlling interest in the corporation and thereby elects the board of directors and officers of the corporation and completely dominates the directors and officers, legally transfer to herself, individually, the property of the corporation?

There is no dispute about the determinative facts.

Mrs. John M. Branham was President of Nashville Dental, Inc. She owned 62% of the voting stock of the corporation and thereby elected the board of directors and officers and completely dominated the officers, directors, and affairs of the corporation. All stockholders, except complainants, were directors and officers and worked for the corporation on salaries or commissions.

The corporation purchased land upon which to erect a building in which to conduct the business of the corporation. This land was transferred by the corporation to Mrs. John M. Branham, individually. She gave her unsecured note for $25,738.48 due in five years, without interest, as payment for the lots of land. This sum was the exact amount which the corporation had paid for the lots. Mrs. Branham agreed to erect a building on the lots which she and the board of directors had agreed would be necessary to meet the needs of the corporation; and that she would lease the building to the corporation when it was finished. Mrs. Branham spent about $36,000 of her own money on this building; then her available cash ran out. The corporation agreed to advance her $60,000 to complete the building. The corporation actually advanced her $61,231.25 to complete the building. Mrs. Branham agreed to pay the corporation these funds advanced to her to finish the building with interest at

five per cent per annum on or before June 1, 1957. In addition, the corporation had paid its own money for small items incident to the transfer of the property in the sum of $1,414.58.

Insofar as we can determine, the account for purchasing the lots and constructing the building now stands, as follows:

(1) Purchase price of the land       $25,738.48
This purchase price is evidenced by the unsecured note of Mrs. Branham to the corporation due in five years without interest.

(2) Various small items paid by corporation incident to transfer       1,414.58

(3) Paid by Mrs. Branham personally       36,000.00

(4) Paid by corporation for Mrs. Branham    61,231.25
Mrs. Branham signed an agreement to pay the corporation this last item on or before June 1, 1957, with interest at 5% per annum.

Total expenditures       $124,384.31

The foregoing items which are due from Mrs. Branham to the corporation have not been paid.

Although Mrs. Branham was not present when the resolution was passed to transfer to her the two lots and when the resolution was passed for the corporation to advance to her the sum of $60,000 to complete the building of the new home for the corporation, she had complete control of the board of directors and the officers of the corporation; and they did exactly what she told them to do. Thus, Mrs. Branham, representing the corporation, directed the corporation to transfer its property to

Mrs. Branham, the individual. Differently stated, while purporting to act as trustee for the benefit of the corporation, being President of the corporation, she dealt with herself in the trust or corporate property.

Mr. Chief Justice Cardozo of the New York Court of Appeals (the court of last resort of New York), later Mr. Justice Cardozo of the Supreme Court of the United States, in his inimitable style, stated the correct rule which governs a trustee when dealing with trust property in the case of Meinhard v. Salmon, reported in 249 N. Y. 458, 459, 164 N. E. 545, 546, 62 A. L. R. 1, in these words:

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

No statement of the general rule can excell in strength and clarity the statement of Judge Caruthers on our Supreme Court (1855) when considering the duty that a

trustee owed to the beneficiaries when dealing with trust property. The case is Tisdale v. Tisdale, 34 Tenn. 596, and the Court said:

"Thus circumstanced, then, could he take to himself, individually, the benefits of his purchase, to the exclusion of his cotenants? Surely not. Nothing is better settled in equity jurisprudence. It is one of the canons of a court of equity that one who undertakes to act for others cannot in the same matter act for himself. Where confidence is reposed, duties and obligations arise which equity will enforce. A trustee cannot throw off the trust at pleasure, to the injury of the cestui que trust. He will not be allowed to mix up his own interests and affairs with those of the beneficiary. This doctrine has its foundation not so much in the commission of actual fraud, but in that profound knowledge of the human heart, which dictated that hallowed petition, 'lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth, that 'a man cannot serve two masters.' The right to sell and buy cannot exist in the same person, because of the antagonistic interest in the two positions. Hence the fairness or unfairness of the transaction, and the comparison of price and value, or the existence or absence of actual fraud, are not permitted to enter into the consideration of the court. It is enough that the relation of trustee and cestui que trust existed. This appearing, the investigation is at an end, and the doctrine applies with all its force. It is certainly too late in the day to require the citation of authorities to establish this doctrine."

240

In Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S. W. (2d) 344, 352, our Supreme Court said:

"Potter, prior to May 1937, had been not only a large stockholder, but the controlling executive of Apex. From January-May 1937, the office of President was vacant, but Potter discharged the functions of the office. Not only as an officer and director, but as controlling stockholder, he owed a fiduciary duty to other stockholders and creditors of Apex."

In Central Bus Lines v. Hamilton National Bank, 34 Tenn. App. 480, 239 S. W. (2d) 583, 585, this Court stated the rule (1951), opinion by Judge McAmis, now Presiding Judge of this Court:

"Corporate officers stand in a fiduciary relation to the corporation and while occupying such position they must act in the utmost good faith. They are not permitted to deal with the corporation or its assets for their own private gain and cannot deal for themselves and for the corporation at one and the same time even though they own or control the great majority of the stock. If they do so act in violation of their trust they must account for any profits made by use of corporate assets. Deaderick v. Bank of Commerce, 100 Tenn. 457, 45 S. W. 786; Steward Mfg. Co. v. Steward, 109 Tenn. 288, 70 S. W. 808; Attalla Iron Ore Co. v. Virginia Iron, Coal & Coke Co., 111 Tenn. 527, 77 S. W. 774; Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S. W. (2d) 344; Davis v. Memphis City Ry. Co., C. C. 22 F. 883."

Mrs. Branham was acting as President and the completely dominant force in the corporation and at the same time she was acting for herself personally in the sale by

the corporation to her personally of valuable corporate properties. Whether the sale benefited the corporation does not enter into the consideration of the Court. Mrs. Branham could not legally act for the corporation and for herself at the same time because of the antagonistic interest of the two positions. As stated so forcefully by Judge Caruthers: "The right to sell and to buy cannot exist in the same person, because of the antagonistic interest in the two positions. Hence the fairness or unfairness of the transaction, and the comparison of price and value, or the existence or absence of actual fraud, are not permitted to enter into the consideration of the court. It is enough that the relation of trustee and cestui que trust existed. This appearing, the investigation is at an end, and the doctrine applies with all its force. It is certainly too late in the day to require the citation of authorities to establish this doctrine."

Reverse the judgment of the trial court. Enter judgment in this Court divesting title to the two lots in question out of Mrs. John M. Branham and vest same in Nashville Dental, Inc. Remand to the Chancery Court to enforce the decree and for the adjustment of the equities of the parties, giving to each party credit for any sum of money which the corporation or Mrs. Branham expended that went into the building on the lots in question; and to do such other acts as will do justice and equity to each party consistent with this opinion.

The question of the fee for Solicitors of complainants will be determined by the Chancellor upon the remand.

Tax all costs against Mrs. Branham.

Felts and Shriver, JJ., concur.