Mrs. Guilberta Dakin MAGGIORE et al., Plaintiffs-Appellants,

v.

J. C. BRADFORD et al., Defendants-Appellants.

Nos. 14790, 14823.

United States Court of Appeals Sixth Circuit.

Dec. 4, 1962.

**520**

David Keeble, of Hooker, Keeble, Dodson & Harris, and W. Raymond Denney, of Denney, Leftwich & Osborn, Nashville, Tenn., Z. T. Osborn, Jr., E. J. Walsh, Nashville, Tenn., on brief, for plaintiffs-appellants.

William Waller, of Waller, Davis & Lansden, Nashville, Tenn., Clarence Evans, Cecil Sims, Nashville, Tenn., on the brief; Farris, Evans & Evans, Bass, Berry & Sims, Nashville, Tenn., of counsel, for defendants-appellants.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and TAYLOR, District Judge.

WEICK, Circuit Judge.

The suit in the District Court was a stockholders derivative action. It was brought by minority stockholders of Phillips & Buttorff Corporation, a Tennessee corporation,[1] to rescind a transaction whereby the controlling shareholders of P & B (hereinafter referred to as Comer Group) financed the purchase of their stock with funds derived from their sale to P & B of 60,000 shares of an unlisted stock owned by them in Wm. R.

Moore Dry Goods Company[2] of Memphis, Tennessee for $2,700,000.

The complaint alleged conspiracy and fraud and charged a violation of the fiduciary duty owing by controlling shareholders. It averred that the assets of P & B were wrongfully depleted by the transaction to the detriment of P & B and the minority shareholders.

The transaction complained of was handled in a somewhat circuitous manner. Brokers, who were made defendants in the action, acquired the shares of P & B on the order of Guy L. Comer with temporary financing. The shares were placed in the name of Church of Christ Foundation, a corporation not for profit, of which Mr. Comer was a trustee. Woodstock Corporation, a Comer company, with the authority of the Foundation and its subsidiary, First National Company, gave P & B an option to purchase the Moore shares at $45.00 a share. P & B loaned $2,000,000 to Woodstock secured by a pledge of the Moore stock, which pledge was made by permission of the owners. The brokers through Woodstock gave First National Company an option to purchase 75,721 shares of the common stock of P & B, which carried the control of P & B. First National Company assigned its option on the P & B stock to the Foundation which exercised it. P & B exercised its option and purchased the Moore shares.

As of December 31, 1955 P & B had cash on hand of $953,335.53 and investments in government and other marketable securities totaling about $2,000,000. In order to make the loan to Woodstock and purchase the Moore stock, P & B liquidated its securities and borrowed additional money from a bank. The Comer Group had previously acquired the Moore shares by the use of Moore's assets and the shares were placed in the name of the Foundation.

The case pended in the District Court for about ten months. Discovery proceedings had been taken. On October 15,

---

1. Phillips & Buttorff Corporation will be referred to as P & B.

2. Wm. R. Moore Dry Goods Company will be referred to as Moore.

1958, which was before the case had been assigned for trial, P & B sold the Moore stock back to the Foundation for $45.00 a share.

The District Court impressed a lien on the proceeds of sale for attorneys fees for plaintiffs' counsel. Plaintiffs then filed an amended complaint seeking to recover from the officers and directors of P & B operating losses sustained by P & B before the transaction was rescinded.

The only questions left for determination by the District Court were as to the allowance of attorneys fees to counsel for plaintiffs, the liability of the officers and directors of P & B for the operating losses sustained by P & B, and the appointment of a receiver.

The District Judge considered the matter of allowance of attorneys fees on the basis of whether the plaintiffs, as minority shareholders, were entitled to relief, rescinding the transaction. On this proposition the controlling evidence was uncontroverted. It remained only for the court to determine the legal consequences.

The District Judge was of the view that this evidence did not prove conspiracy or fraud. He found that the price paid for the Moore shares was not unfair or oppressive either to P & B or its minority shareholders. He held that the evidence did not show that the Comer Group actually exercised control over the directors and officers of P & B even though they had the right to control; that the operating losses were not attributable in whole or part to the Moore purchase. The court dissolved the attorneys' lien and dismissed the complaint.

■ On the issue whether the Comer Group exercised control, the transaction speaks for itself. The officers and directors of P & B entered into the transaction without making a proper investigation and without knowledge even as to who was behind the deal. They liquidated all the marketable securities of the company and made a loan to a corporation which had no assets other than the Moore stock. Looking through the cor-

porate maze, the deal was simply one whereby the majority shareholders were using corporate assets to finance their purchase of the stock. It is clear to us that it was not an arms length business transaction, but one which was entered into by a person dealing with himself. Without going into further detail, we think that, at least, constructive fraud was shown and that the District Court was mistaken in not so finding. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

■ It is well-settled that dominant or controlling shareholders who exercise control over a corporation are fiduciaries. Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281; Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S. St. 533, 63 L.Ed. 1099; Seagrave Corp. v. Mount, 6 Cir., 212 F.2d 389; Dale v. Thomas H. Temple Company, 186 Tenn. 69, 208 S.W.2d 344. Some authorities hold that transactions between persons in control and the corporation are illegal and may be set aside irrespective of the fairness thereof. Gillespie v. Branham, 47 Tenn.App. 234, 337 S.W.2d 689, cert. denied by the Supreme Court of Tennessee on December 12, 1959; Attalla Iron Ore Company v. Virginia Iron, Coal & Coke Co., 111 Tenn. 527, 77 S.W. 774.

If the transaction is regarded merely as one subject to "close scrutiny," in our judgment, it cannot withstand the light of day. Stripping P & B of its cash and marketable securities and requiring it to borrow money so that the Comer Group could finance their controlling shares certainly operated to the prejudice of P & B and its minority shareholders.

The evidence clearly disclosed the plan to acquire the control of P & B by the use of its assets. The defendants all participated in carrying it out.

■ A conspiracy is an agreement to perform an illegal act. It may be shown by direct as well as circumstantial evidence. In our judgment, it was clearly established by the evidence.

■ It is no defense that plaintiffs did not exhaust their corporate remedies.

Since P & B was under the control of the Comer Group, it would have been futile to resort to it. The fact that the case pended in the District Court for ten months before the rescission was made is pretty good proof of the unavailability of any adequate corporate remedy. Under the circumstances resort to such remedies was excused. Akin v. Mackie, 203 Tenn. 113, 310 S.W.2d 164; Peeler v. Luther, 175 Tenn. 454, 135 S.W.2d 926.

■ The District Court did not consider the right to allowance of attorneys' fees on the basis of the liability of defendants to rescind the transaction and the case must be remanded for that purpose. The fact that the defendants rescinded the transaction before the court had an opportunity to pass upon the merits of the case would not, in our judgment, defeat the right to compensation. The rescission, however, without the necessity of a trial must be taken into account in fixing fees along with other relevant factors.

■ A question was raised as to liability for interest on $2,700,000. We think it should be computed at the legal rate from the date of the commencement of this action (January 16, 1958) to the date of rescission (October 15, 1958) less credits for interest received by P & B from Woodstock Corporation and less dividends received by P & B from the Moore stock during said period. Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S.W.2d 344.

Relative to the operating losses, the District Court found as a fact that these were not attributable to the purchase of the Moore stock. In our judgment, this finding was not clearly erroneous. Nor do we find any error in the refusal of the court to appoint a receiver for P & B, or in denying plaintiffs' motion under Rule 60(b).

The judgment of the District Court is reversed in Case No. 14790 and the cause remanded for further proceedings in conformity with this opinion. The judgment in Case No. 14823 is affirmed.