Max MAY, et al., Plaintiffs,

v.

**NATIONAL BANK OF COMMERCE, a banking corporation organized under the laws of the United States of America, in its corporate capacity and as Trustee of the Memphis Equipment Company Employee Stock Ownership Plan, and Lawrence Scott, an individual resident of Cordova, Shelby County, Tennessee, Defendants.**

**No. 03–2122 M1/P.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 21, 2004.

John J. Heflin, III, Kenneth P. Jones, Bourland Heflin Alarez & Minor, Memphis, TN, for Plaintiffs.

Bobby M. Leatherman, Jr., Leatherman Law Office, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MCCALLA, District Judge.

Before the Court is Plaintiffs' Motion for Partial Summary Judgment, filed April 14, 2004.[1] Defendant Lawrence Scott responded in opposition on May 20, 2004. Plaintiffs move for partial summary judgment as to liability for claims brought under Tennessee Law and the Employee Retirement Income Security Act. For the following reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.

## I. Background

This case concerns the conduct through which Defendant Lawrence Scott ultimately obtained ownership of the Memphis Equipment Company, Inc. ("MEC") following a stock purchase transaction in January, 1999. Plaintiffs brought claims against Scott alleging Scott improperly acted without approval of MEC's Board of Directors, breached his fiduciary duties as a director and officer of the company and wrongfully converted company funds for his own personal use. Plaintiffs also brought claims against Scott under the Employee Retirement Income Security Act alleging he engaged in a prohibited transaction, breached his fiduciary duties and failed to properly disclose information regarding the ESOP.

The following facts are undisputed in this case. Defendant Scott was the President of MEC and served on its Board of Directors. MEC maintained an Employee Stock Ownership Plan ("MEC ESOP") which, prior to the January 1999 stock purchase transaction, held all of the stock of MEC. Scott served as a member of the Administrative Committee of the MEC ESOP. Plaintiffs Max May and Billy Thompson were the other two members serving on MEC's Board of Directors and the Administrative Committee of the MEC ESOP. At all relevant times, the National Bank of Commerce ("NBC") was the trustee of the MEC ESOP.

Scott had thought about purchasing MEC's stock for almost ten years before the January 1999 stock purchase transaction. Southard Financial ("Southard") performed valuation reports for either the minority interests in the MEC stock held in the MEC ESOP or of the stock alone from August 31, 1990 through August 31, 1996.[2] Throughout that time, Scott re-

1. The Court received a Notice of Settlement between Plaintiffs and Defendant National Bank of Commerce on October 13, 2004. Pending before the Court is Plaintiffs' Combined Motion and Memorandum for Expedited Hearing for Court Approval of Resolutions of Memphis Equipment Company Board of Directors and Administrative Committee of Memphis Equipment Company Employee Stock Ownership Plan Relating to Proposed

Settlement and Release of Claims Against Defendant National Bank of Commerce, filed October 19, 2004. The Court will therefore not address any of the issues raised by Plaintiffs against Defendant National Bank of Commerce.

2. Plaintiffs specifically allege that Southard performed valuations of the minority interests in the MEC stock held in the MEC ESOP.

peatedly sought a lower valuation from Southard.

For several years before the stock purchase transaction, MEC maintained a banking relationship with SouthTrust Bank ("SouthTrust"). At a time no later than the spring of 1998, Scott began negotiations with SouthTrust for a loan to MEC which would be secured by MEC's assets. On June 18, 1998, Scott signed a commitment letter from SouthTrust accepting its offer to make a loan to MEC. In order to close the loan, SouthTrust required a Certified Corporate Resolution. Plaintiff Thompson signed, without reading, the Certified Corporate Resolution, authorizing Scott to conduct the loan transaction with SouthTrust on behalf of MEC. (Pl.'s Statement of Uncontroverted Facts in Support of Mot. for Partial Summ. J. ¶ 57.) (Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts p. 4) Thompson signed the resolution after he was told by Scott that his signature was required on a document required to execute a routine business matter with South-Trust. *Id.* SouthTrust then made a loan to MEC of $2,300,000, which was based on the value of MEC's assets and its ability to repay the loan. Scott does not dispute that Plaintiffs May and Thompson never knew, discussed or approved the South-Trust loan to MEC.

Scott provided David Lynch, an employee at NBC supervising the MEC ESOP, a new Trust Agreement dated July 1, 1998, to replace the original Trust Agreement previously entered between MEC and Union Planters. The new Trust Agreement was entered into between MEC and NBC. (Pl.'s Ex. 15) Both Trust Agreements provided that pursuant to the directions of the Administrative Committee, the Trustee would carry the responsibility of administering the MEC ESOP. The new Trust Agreement, however, contained an added provision stating:

> Notwithstanding any provision in the Plan or this Trust Agreement to the contrary, in the event that the Trust has an opportunity to sell substantially all of the Company Stock it holds to any person or persons, then the investigation, negotiation, and investment decision with respect to such potential sale shall be performed by the Trustee in its sole discretion, without any direction or instruction from the Committee, the Company, or any other party. In addition, the Committee may authorize the Trustee to act on any other matter or class of matters with respect to which direction or instruction to the Trustee by the Committee is called for hereunder without specific direction or other instruction from the Committee.

(Pl.'s Ex. 15). Lynch signed the new Trust Agreement. Although Plaintiff May's signature appeared on the new Trust Agreement, Scott does not dispute that he did not tell May about the added provision regarding the Trustee's powers to sell company stock. Scott also does not dispute that May and Thompson were never told of this change and that they never discussed or approved the new Trust Agreement.

On January 19, 1999, Lynch executed a letter of intent that described an agreement by NBC to sell all but one share of MEC stock to MEC and to sell the remaining one share of MEC stock to Scott for a price of $7.78 per share. Lynch then executed a Stock Purchase Agreement on January 21, 1999 whereby MEC would

Scott, on the other hand, contends that Southard performed valuations of the stock

held by the MEC ESOP.

redeem all but one share of MEC stock at a price of $7.78 per share and Scott would purchase the remaining share of MEC stock at the same price. Scott did not inform May and Thompson about the stock purchase transaction and has admitted that he bought the stock of MEC without the knowledge of Plaintiffs May and Thompson or the other MEC ESOP plan participants. He does not dispute that he told his ex-wife, Jolynne Scott, who is also employed by MEC, that he owned MEC, that others were unaware of his ownership and that he wanted to keep that fact a secret. Scott does not remember any costs he personally paid to obtain ownership of MEC except for the $7.78 he paid to acquire one share of MEC stock. He does not dispute that MEC paid the remaining costs of the stock purchase transaction.

Scott and NBC's trust department prepared the Summary Annual Reports given to MEC ESOP participants. The Annual Report for the MEC ESOP which was filed with the United States Department of Labor for the year ending August 31, 1999, disclosed that there was a "sale, exchange, or lease of any property between the plan and the employer, any fiduciary, any of the five most highly paid employees of the employer, any owner of a 10% or more interest in the employer, or relatives of such persons ..." for $2,302,608.00.[3] (Pl.'s Ex. 182). However, the Summary Annual Reports for the years ending August 31, 1999 or thereafter did not disclose the stock purchase transaction.

May and Thompson did not suspect that the company's stock originally held by the ESOP had been sold until either October or November of 2002. When Thompson later went to Scott and asked him whether there was a change in ownership, Scott replied that nothing had changed. At some point following that conversation, Scott told Thompson that he lied and that he purchased the company.[4]

Before the January 1999 stock purchase transaction, Scott also used MEC funds for his own personal use. In December 1997, Scott bought a Honda 4-wheeler for $5,981.40. Additionally, in August 1999, Scott bought, with company funds, a 1999 Toyota Camry for his ex-wife for $18,342.00.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. It is undisputed that Thompson signed the Annual Report given to the Department of Labor. Scott does not dispute, however, that Thompson signed the Annual Report without studying it because he relied on Scott to correctly complete the reports.

4. The parties dispute the specific time Scott communicated to Thompson that he purchased the company. Plaintiffs specifically allege that Scott communicated this information within a few days after Thompson asked Scott whether there was a change in ownership. Scott, on the other hand, contends that he informed Thompson about his purchase of the company the day after Thompson asked him whether there was a change in ownership.

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Analysis

Plaintiffs move for partial summary judgment against Defendants as to claims brought under Tennessee state law and the Employee Retirement Income Security Act ("ERISA"). The Court will analyze each aspect of Plaintiffs' motion for partial summary judgment.

### A. Tennessee Law Claims

Plaintiffs allege Scott's conduct did not satisfy the requirements of several provisions of the Tennessee Code. Plaintiffs specifically allege that Scott, without the knowledge or consent of the Board of Directors, entered into the following transactions in violation of § 48–22–101 and § 48–18–202 of the Tennessee Code: (1) the 1998 Trust Agreement with NBC; (2) the loan from SouthTrust Bank; (3) the redemption where MEC redeemed all but one share of its stock; and (4) Scott's purchase of the remaining share of MEC stock. Plaintiffs also allege that Scott vio-

lated § 48–18–301 and § 48–18–302 of the Tennessee Code by failing to act in good faith and by engaging in self dealing. Finally, Plaintiffs claim that Scott wrongfully converted corporate property under Tennessee law.

Defendant Scott contends that Plaintiffs' state law claims regarding the transactions leading to the stock purchase are preempted by ERISA.[5]

### 1. ERISA Preemption

ERISA preempts state law claims that "relate to" an employee benefit plan covered under ERISA. *29 U.S.C. § 1144(a)*; *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 939 (6th Cir.1997). An ESOP is a plan covered under ERISA. *Benefits Comm. Of Saint–Gobain Corp. v. Key Trust Co. of Ohio, N.A.*, 313 F.3d 919, 925 (6th Cir., 2002). A state law claim will "relate to" an employee benefit plan if "it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Sixth Circuit has noted that "only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id.*

The Court concludes that under the reasoning of *Cromwell*, Plaintiffs claims under Section 48–22–101 and Section 48–18–202 regarding Scott's conduct of entering into various transactions without the knowledge or approval of MEC's Board of Di-

---

5. Scott, in his Memorandum in opposition to Plaintiff's Motion for Partial Summary Judgment, also mentions that Plaintiff's state law claims are barred by the statute of limitations. Scott, however, does not move the Court for relief with respect to the statute of limitations defense. Therefore, the Court does not find it necessary to consider this argument.

rectors are not preempted by ERISA.[6] Plaintiffs assert these state law claims not to recover benefits under the MEC ESOP, but instead as a basis to reverse the transactions in which Scott was involved.

■ The Court finds that Plaintiffs' state law claims for breach of fiduciary duty are similarly not preempted by ERISA. Although some state law claims of breach of fiduciary duty are preempted by ERISA, *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 161 (6th Cir.1989) (concluding claim of breach of fiduciary duty was preempted where plaintiffs alleged employer fraudulently induced participation in a newly established benefit plan because ERISA provided a specific remedy for such a claim.); *Smith v. Provident Bank*, 170 F.3d 609, 613 (1999) (concluding common law breach of fiduciary duty claim was preempted by ERISA where former trustee of an ERISA plan committed errors in transferring the assets held in a plan participant's account.), *Cromwell* counsels in favor of the opposite result here. Plaintiffs state law breach of fiduciary duty claims do not seek the recovery of an ERISA benefit under the MEC ESOP. Rather, the claims are asserted by Plaintiffs as a basis to void Scott's transactions. Moreover, Plaintiffs' state law breach of fiduciary duty claims allege that Scott's transactions should be voided because as a Director and Officer of MEC, he violated his fiduciary duties to the company in general rather than to the MEC ESOP.

### 2. Tennessee Code § 48–22–101

■ Plaintiffs allege that the loan transaction executed by Scott with SouthTrust Bank did not follow the requirements established in § 48–22–101(a)(2) of the Tennessee Code. Section § 48–22–101(a) provides in pertinent part:

> A corporation may, on the terms and conditions and for the consideration determined by the board of directors:
>
> (2) Mortgage, pledge, dedicate to the repayment of indebtedness (whether with or without recourse), or otherwise encumber any or all of its property whether or not in the usual and regular course of business; ...

Tenn.Code Ann. § 48–22–101(a)(2).

Scott does not dispute that Plaintiffs May and Thompson did not know, discuss, or consent to Scott's loan transaction with SouthTrust. Although Plaintiff Thompson signed, without reading, the Certified Corporate Resolution required by SouthTrust to close the loan which gave Scott the authority to conduct the loan transaction with SouthTrust on behalf of MEC, Scott does not dispute Thompson signed the resolution after he was told by Scott that his signature was required to execute a routine matter concerning MEC's banking relationship with SouthTrust. Under these facts, the Court finds that as a matter of law, Scott's loan transaction with South-Trust did not satisfy the requirements of Section 48–22–101(a)(2). Therefore, the Court GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under Section 48–22–101(a)(2).

### 3. Tennessee Code § 48–18–202(a)

■ Plaintiffs allege that Scott, without conducting a meeting of the Board of Di-

---

**6.** The Court does not interpret Defendant Scott to be arguing that Plaintiffs' state law claims for wrongful conversion are subject to ERISA preemption. In his response in opposition to Plaintiffs' motion for summary judgment, Scott argues that Plaintiffs' state law claims seeking to reverse the Scott/MEC restructuring transaction are preempted by ERISA. Moreover, Scott separately briefs the state law claim of wrongful conversion in another section of his response.

rectors, executed the 1998 Trust Agreement with NBC, the loan transaction with SouthTrust, the redemption by MEC of all but one of its shares from the MEC ESOP and his own individual purchase of the remaining share of stock. Section 48–18–101(b) of the Tennessee Code provides that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitations set forth in the charter." Tenn.Code Ann. § 48–18–101(b). Section 48–18–202(a) of the Tennessee Code addresses actions taken by the Board of Directors without a meeting and provides:

> (a) Unless the charter or bylaws provide otherwise, action required or permitted by chapters 11–27 of this title to be taken at a board of directors' meeting may be taken without a meeting. If all directors consent to taking such action without a meeting, the affirmative vote of the number of directors that would be necessary to authorize or take such action at a meeting is the act of the board. The action must be evidenced by one (1) or more written consents describing the action taken, signed by each director in one (1) or more counterparts, indicating each signing director's vote or abstention on the action, and shall be included in the minutes or filed with the corporate records reflecting the action taken.

Tenn.Code Ann. § 48–18–202(a).

In the case at bar, the undisputed facts reveal that both May and Thompson did not consent to the transactions undertaken by Scott without a meeting of the Board of Directors. For instance, Scott executed the new trust agreement with NBC without the knowledge or consent of May and Thompson. Although, May's signature appears on the new trust agreement, Scott did not tell May about the changes made to that agreement which gave NBC as trustee the sole discretion to sell company stock. As noted above, Scott also entered into the loan transaction with SouthTrust without May and Thompson's consent or knowledge. Scott has also admitted that he purchased the stock of the MEC ESOP without the knowledge of Plaintiffs May and Thompson or the other plan participants. He also does not dispute that he told his ex-wife that he owned MEC, that others were unaware of his ownership, and that he wanted to keep that fact a secret.

Scott contends that he had the authority to enter into all the business transactions on behalf of MEC. The Court finds this argument unavailing, because Scott's conduct in entering into the above transactions nevertheless failed to comply with the requirements listed in the statute. The Court therefore GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under Section 48–18–202(a) of the Tennessee Code.

### 4. Tennessee Code § 48–18–301 and § 48–18–302

Plaintiffs contend that Defendant Scott, by changing the terms of the 1998 Trust Agreement, obtaining the loan from SouthTrust to finance the stock purchase, and entering into the stock purchase transaction with NBC breached his fiduciary duties under § 48–18–301 and § 48–18–302 of the Tennessee Code. Section 48–18–301(a) of the Tennessee Code governs General Standards of Conduct for Directors and provides:

> (a) A director shall discharge all duties as a director, including duties as a member of a committee:
>
> > (1) In good faith;
> >
> > (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) In a manner the director reasonably believes to be in the best interests of the corporation.

Tenn.Code Ann. § 48–18–301(a). Section 48–18–403 of the Tennessee Code provides essentially the same language regarding the standard of conduct for officers. Tenn.Code Ann. § 48–18–403 (Supp.2002). Section 48–18–302(a) of the Tennessee Code governs conflict of interest transactions by directors and officers and specifically provides:

(a) A conflict of interest transaction is a transaction with the corporation in which a director or officer of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable by the corporation solely because of the director's or officer's interest in the transaction if any one (1) of the following is true:

(1) The material facts of the transaction and the director's or officer's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;

(2) The material facts of the transaction and director's or officer's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(3) The transaction was fair to the corporation.

Tenn.Code Ann. § 48–18–302(a).

 Directors and officers of a corporation are fiduciaries to the corporation and its shareholders. *Johns v. Caldwell,* 601 S.W.2d 37, 41 (Tenn.Ct.App.1980). Specifically, a director or officer of the corporation must act in good faith and remain loyal to the corporation and its shareholders. *Hayes v. Schweikart's Upholstering Co.,* 55 Tenn.App. 442, 402 S.W.2d 472, 483 (1965). Directors and officers "are not permitted to deal with the corporation or its assets for their own private gain and cannot deal for themselves and for the corporation at one and the same time..." *Central Bus Lines v. Hamilton Nat., Bank,* 34 Tenn.App. 480, 239 S.W.2d 583, 585 (1951).

 The Court concludes that Scott breached his fiduciary duties as a director and officer of MEC under Tennessee law and finds Scott's arguments to the contrary unavailing.[7] Scott was a member of MEC's Board of Directors and also served as the company's President. For almost ten years prior to the stock purchase transaction in January 1999, he had thought about purchasing MEC stock from the ESOP. Southard Financial performed valuation reports of MEC from August 31, 1990 through August 31, 1996. Scott repeatedly sought a lower valuation from Southard.

---

**7.** Scott contends that summary judgment as to Plaintiffs' claims for breach of fiduciary duty under Tennessee Code § 38–18–301 and § 38–18–302 is inappropriate because he did not cause NBC, as Trustee of the MEC ESOP, to sell him company stock. The Court disagrees. Scott executed the 1998 Trust Agreement giving the Trustee the sole discretion to sell company stock without direction or instruction from the Administrative Committee of the ESOP thereby facilitating his purchase of MEC stock. The Court also finds Scott's attempts to distinguish cases relied upon by Plaintiffs in arguing Scott breached his fiduciary duties unavailing. Finally, Scott contends that summary judgment is inappropriate because NBC received fair value for the stock and was not harmed by the stock purchase transaction. The Court notes the question of harm is irrelevant, as Plaintiffs do not assert claims under the Tennessee Code as a basis to obtain damages, but rather to void the transactions at issue.

Scott obtained a loan from SouthTrust for $2,300,000 secured by MEC's assets. Scott does not dispute that the Board of Directors never knew, discussed or approved the loan. Although Plaintiff Thompson signed, without reading, the Certified Corporate Resolution authorizing Scott to conduct the loan transaction with SouthTrust on behalf of MEC, Scott does not dispute that Thompson signed the resolution after Scott told him that his signature was needed on a normal banking document for a routine business matter with SouthTrust.

On July 1, 1998, Scott executed a new Trust Agreement. The new Trust Agreement contained an added provision giving NBC, as Trustee of the MEC ESOP, sole discretion to sell company stock without direction or instruction from the Administrative Committee. Although Plaintiff May's signature appeared on this agreement, Scott did not tell May about the change regarding the Trustee's powers. Moreover, May and Thompson never discussed or approved the new Trust Agreement.

Scott has also admitted that he bought the stock of MEC in January, 1999, without the knowledge of Plaintiffs May and Thompson or the other ESOP plan participants. Moreover, he told his ex-wife that he owned MEC, that others were unaware of his ownership and that he wanted to keep that fact a secret. Scott does not remember any costs he personally paid to obtain ownership of MEC except for the $7.78 he paid to acquire one share of stock. He does not dispute that MEC paid the remaining costs of the stock purchase transaction. May and Thompson did not learn that MEC's stock was sold out of the ESOP until October or November, 2002. When Thompson later confronted Scott and asked him whether there was a change in ownership, Scott replied that nothing

had changed. It was only at some point following that conversation that Scott told Thompson that he lied and that he purchased the Company.

Based on these facts, the Court finds as a matter of law that Scott did not conform to the standards of conduct outlined in Section 48–18–301(a) of the Tennessee Code. Scott's conduct in orchestrating the purchase of the company was not made in good faith. An ordinarily prudent person acting in Scott's position as a director and President of the company would not have obtained ownership in the above manner. Moreover, Scott's conduct shows that he could not have been reasonably acting in the best interests of the company. The Court also finds that the undisputed facts show Scott had a direct or indirect interest in the above transactions and concludes that those transactions constituted conflict of interest transactions under Section 48–18–302(a) of the Tennessee Code. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under § 48–18–301 and § 48–18–302 of the Tennessee Code.

### 5. Wrongful Conversion

■ "A conversion . . . is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Barger v. Webb* 216 Tenn. 275, 391 S.W.2d 664, 665 (1965). Plaintiffs allege Scott is liable for converting MEC funds for his own personal use and state that they will prove the specific amount of company funds converted at trial. Specifically, Plaintiffs allege that in December, 1997, Scott bought a Honda 4–wheeler for $5,981.40 with MEC funds. Plaintiffs also allege that following the stock purchase sale, Scott, in August 1999, bought with company funds a Toyota Camry for his ex-wife for $18,342.00.[8]

8. Plaintiffs also allege "Scott has admitted

taking funds from MEC, the unpaid balance

Scott does not dispute that he used MEC funds to purchase the 4-wheeler for his own personal use. Scott alleges, however, that he was under the belief he repaid the company for the expenses associated with the purchase. The Court therefore finds that there is an issue of material fact and therefore DENIES Plaintiffs' motion for summary judgment as to their claim that Scott converted MEC assets for his personal use in purchasing the Honda 4-wheeler.

Scott contends that Plaintiffs' claims of conversion with respect to conduct after January 29, 1999 must fail because Plaintiffs lacked standing after that time. He specifically argues that under § 48–17–401 of the Tennessee Code, which states the procedures required in derivative proceedings, Plaintiffs are not shareholders. Section 48–17–401(a) of the Tennessee Code provides:

> (a) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.

Tenn.Code Ann. § 48–17–401(a) (Supp. 2002). Scott contends Plaintiffs are not shareholders under the statute because they do not fall into either of the categories listed in § 48–17–401(e) which states:

> (e) For purposes of this section, "shareholder" includes a beneficial owner whose shares are held in a voting trust or held by a nominee on the beneficial owner's behalf.

Tenn.Code Ann. § 48–17–401(e) (Supp. 2002). According to Scott, because Plaintiffs do not meet either of these categories, they lack standing to bring a derivative claim for conversion.

The Court finds this argument unavailing, as the plain meaning of the statute does not lead to such an interpretation. The statute does not state that a shareholder is only someone who falls into the categories listed under § 48–17–401(e). Instead, it states that a shareholder includes a person who falls into one of the two categories listed in § 48–17–401(e).

Scott alternatively argues that Plaintiffs' lack standing to assert claims for conversion with respect to conduct occurring after the stock purchase sale in January 1999 because Scott thereafter owned 100% of the shares of MEC stock. Until the stock purchase transaction is voided, Scott argues Plaintiffs cannot assert derivative rights for conduct that occurred following the stock purchase sale. The Court concludes that it must reserve resolving this issue pending final determination as to whether Scott's transactions are voidable. The Court therefore DENIES Plaintiffs' motion for summary judgment as to its claim for conversion regarding Scott's August 1999 purchase of the Toyota Camry using MEC funds.

## B. ERISA

Plaintiffs contend that Defendant Scott violated several provisions of ERISA. Plaintiffs specifically allege Scott engaged in a prohibited transaction under 29 U.S.C. § 1106. Plaintiffs also claim Scott failed to disclose the stock purchase transaction with NBC under 29 U.S.C. § 1023(b) and 29 U.S.C. § 1024(b). Plaintiffs finally al-

---

of which he claims totals approximately two hundred thousand dollars ($200,000)." (Pl.'s Mem. in Support of Mot. for Partial Summ. J. p. 43). Plaintiffs, however, do not cite the portion of the record supporting this allegation. Accordingly, the Court cannot consider this specific allegation for purposes of summary judgment.

lege Scott breached his fiduciary duties under 29 U.S.C. § 1104 and 29 U.S.C. § 1109.

### 1. Scott's liability under 29 U.S.C. § 1106, 29 U.S.C. § 1104 and 29 U.S.C. § 1109 for conduct surrounding the stock purchase transaction

29 U.S.C. § 1106 prohibits transactions between a plan and a party in interest or fiduciary.[9] 29 U.S.C. § 1104 states the duties of an ERISA fiduciary. 29 U.S.C. § 1104. Defendant Scott contends he is not subject to liability under 29 U.S.C. § 1106 and 29 U.S.C. § 1104 because he was not a fiduciary with respect to the stock purchase transaction under the statute. He specifically contends he possessed no control over NBC's decision to sell company stock. Plaintiffs, on the other hand, claim Scott is a fiduciary under the above statutes because he was a member of the Administrative Committee of the MEC ESOP, a member of the MEC Board of Directors and the President of the company.

■■■ ERISA provides the following definition for a fiduciary:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan..." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). In *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 718 (6th Cir.2000), the Court of Appeals stated that:

We have recognized that employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust.

*Id.* As explained by the Sixth Circuit in *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir.2001), the *Hunter* Court emphasized the necessity of looking at the conduct at issue to determine whether someone is an ERISA fiduciary. *Id.* The *Hunter* Court specifically stated that:

The fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity. Thus, we must examine the conduct at issue to determine whether it constitutes "management" or "administration" of the plan, giving rise to fiduciary concerns, or "merely [a] 'business decision [ ]' that ha[s] an effect on an ERISA plan" not subject to fiduciary standards.

*Hunter*, 220 F.3d at 718 (quoting *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir.1998)). ERISA is not designed to regulate purely corporate behavior. *Akers v. Palmer*, 71 F.3d 226, 229 (6th Cir.1995).

■■■ Plaintiffs allege Scott breached his fiduciary duties to the ESOP by engaging in the following conduct: executing the stock purchase transaction with MEC; changing the terms of the MEC ESOP

---

9. ERISA broadly defines a party in interest "to include any fiduciary, a person providing services to the plan, an employer whose employees are covered by the plan, and certain shareholders and relatives." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir.2002) (citing 29 U.S.C. § 1002(14)(A)-(F)).

Trust Agreement; fraudulently obtaining May's signature on the amended Trust Agreement; concealing the stock purchase transaction from the Officers, Board of Directors and plan beneficiaries; manipulating information given to those who conducted valuations of MEC stock and NBC; and concealing the stock purchase transaction from Thompson and May after it occurred.

Based on the above conduct, the Court cannot conclude as a matter of law that Scott is an ERISA fiduciary. Although Scott changed the terms of the trust agreement giving NBC the sole discretion to sell company stock in the ESOP, under *Hunter*, such a change of terms does not impose ERISA's fiduciary obligations. Moreover, the other instances of conduct by which Scott is alleged to have breached his fiduciary duties do not reveal that he had any discretionary authority or control over the management or administration of the plan. Instead, the Court finds that Scott's above conduct constituted corporate business decisions made in an effort to obtain ownership of the company. Accordingly, the Court DENIES Plaintiffs' motion for summary judgment as to Scott's liability under 29 U.S.C. § 1106. The Court also DENIES Plaintiff's motion for summary judgment as to Scott's liability under 29 U.S.C. § 1104 with respect to the above conduct.

### 2. Failure to Disclose

Plaintiffs move for summary judgment as to Scott's liability for failure to disclose the stock purchase transaction in the Summary Annual Reports provided to the MEC ESOP plan participants under 29 U.S.C. § 1023(b), 29 U.S.C. § 1024(b) and the fiduciary duty provisions of 29 U.S.C. § 1104 and 29 U.S.C. § 1109. Scott argues that the information disclosed in the Summary Annual Reports satisfied the re-

quirements of Section 1023(b) and Section 1024(b).

29 U.S.C. § 1023 requires an employee benefit plan covered by ERISA to have an annual report published and filed with the Secretary of Labor. 29 U.S.C. § 1023. Under Section 1023(b), the annual report must include a financial statement. 29 U.S.C. § 1023(b). Section 1023(b)(3) further provides that the financial statement must have attached certain information in separate schedules including:

(A) a statement of the assets and liabilities of the plan aggregated by categories and valued at their current value, and the same data displayed in comparative form for the end of the previous fiscal year of the plan;

(B) a statement of receipts and disbursements during the preceding twelve-month period aggregated by general sources and applications; ...

(D) a schedule of each transaction involving a person known to be party in interest, the identity of such party in interest and his relationship or that of any other party in interest to the plan, a description of each asset to which the transaction relates; the purchase or selling price in case of a sale or purchase, the rental in case of a lease, or the interest rate and maturity date in case of a loan; expense incurred in connection with the transaction; the cost of the asset, the current value of the asset, and the net gain (or loss) on each transaction;

29 U.S.C. § 1023(b)(3).

Under 29 U.S.C. § 1024(b), the publication of summary plan descriptions and annual reports must be made to plan participants and beneficiaries. 29 U.S.C. § 1024(b). Section 1024(b)(1) requires the administrator to provide each participant and each beneficiary receiving plan benefits "all modifications and changes referred

to in section 1022(a)" and specifically provides the following disclosure requirements regarding modifications to a plan:

If there is a modification or change described in section 1022(a) of this title (other than a material reduction in covered services or benefits provided in the case of a group health plan (as defined in section 1191b(a)(1) of this title)), a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan.

29 U.S.C. § 1024(b)(1). Section 1022(a) provides in pertinent part:

A summary of any material modification in the **terms of the plan** and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.

29 U.S.C. § 1022(a) (emphasis added). Additionally, Section 1024(b)(3) states:

Within 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

29 U.S.C. § 1024(b)(3).

In the case at bar, Plaintiffs do not specifically state what information Scott failed to disclose to the Department of Labor in violation of Section 1023(b) of ERISA. Rather, Plaintiffs state as undisputed that Scott disclosed the stock purchase transaction to the Department of Labor for the fiscal year ending August 31, 1999. The Court therefore DENIES Plaintiffs' motion for summary judgment as to Scott's liability under Section 1023(b) of ERISA.

■ Similarly, the Court concludes that Plaintiffs are not entitled to judgment as a matter of law as to Scott's liability for failing to disclose the stock purchase transaction under Section 1024(b)(1). As noted, if there is a modification as defined under Section 1022(a), Section 1024(b)(1) requires an administrator to provide to the ESOP plan participants a summary description of modifications. In the case at bar, the Plaintiffs allege the stock purchase transaction was a material modification to a plan. The Court notes, however, that Section 1022(a) refers to "any material modification in the terms of the plan." 29 U.S.C. § 1022(a). The stock purchase transaction was not a material modification in the terms of the plan, but was rather a modification in the type of assets contained in the plan. Accordingly, the Court DENIES Plaintiffs' motion for summary judgment as to Scott's liability under Section 1024(b)(1) of ERISA.

■ The Court, however, finds that Scott is liable under Section 1024(b)(3) of ERISA. Scott was an administrator of the ESOP under ERISA. Section 1002(16)(A)(i) defines an administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." The 1998 Trust Agreement states that pursuant to the directions of the MEC ESOP Administrative Committee, the Trustee is responsible for the administration of the plan. Scott was a member of the Administrative Committee.

It is undisputed that Scott and the NBC trust department prepared the Summary Annual Reports to the ESOP plan participants. As noted above, Scott disclosed the stock purchase transaction in the annual report for the year ending August 31, 1999, that was filed with the Department of Labor. However, the Summary Annual Reports provided for the ESOP plan participants for the years ending August 31, 1999, or thereafter did not disclose the January 1999 stock purchase transaction. Under 29 U.S.C. § 1024(b)(3), a plan administrator must provide to plan participants "such other material as is necessary to fairly summarize the latest annual report." 29 U.S.C. § 1024(b)(3). The Court finds that the stock purchase transaction constituted such necessary material and Scott's failure to disclose it was a violation of the statute. The Court therefore GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under Section 1024(b)(3) of ERISA.

■■■ Scott's failure to disclose the stock purchase transaction to the ESOP participants also constituted a violation of the breach of fiduciary duty provisions listed in 29 U.S.C. § 1104. Section 1104(a)(1) provides in pertinent part:

(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1). "ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan." *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir.1999). There are three components to ERISA's fiduciary duty:

The first element is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" Second, ERISA imposes a "prudent man" obligation, which is "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single-minded devotion" to those same plan participants and beneficiaries. Finally, an ERISA fiduciary must " 'act for the exclusive purpose' " of providing benefits to plan beneficiaries.

*Gregg v. Transp. Workers of America Int'l.*, 343 F.3d 833, 840–41 (6th Cir.2003) (internal citations omitted) (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995)). 29 U.S.C. § 1109 describes the liability stemming from a breach of fiduciary duty and specifically provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach,

and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title...

29 U.S.C. § 1109(a).

In the case at bar, Scott's failure to disclose the stock purchase transaction in the Summary Annual Reports to the ESOP plan participants under Section 1024(b)(3) was a decision that was not in the best interests of the plan participants. Moreover, a prudent person acting in Scott's position would not fail to mention the stock purchase transaction when preparing the Summary Annual Reports for the plan participants. Because the Court concludes that Scott breached his fiduciary duties under Section 1104, Scott is also liable to the plan under Section 1109.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under § 48–22–101(a)(2), § 48–18–202(a), § 48–18–301 and § 48–18–302 of the Tennessee Code. The Court GRANTS Plaintiffs' motion for summary judgment as to Scott's liability under 29 U.S.C. § 1024(b)(3), 29 U.S.C. § 1104 and 29 U.S.C. § 1109 for failure to disclose. The Court DENIES Plaintiffs' motion for summary judgment as to Scott's liability for converting MEC funds to purchase the Honda 4–wheeler and the 1999 Toyota Camry. The Court DENIES Plaintiffs' motion for summary judgment as to Scott's liability under 29 U.S.C. § 1106, 29 U.S.C. § 1104 and 29 U.S.C. § 1109 for conduct surrounding the stock purchase transaction. Finally, the Court DENIES Plaintiffs' motion for sum-

mary judgment as to Scott's liability for failure to disclose under 29 U.S.C. § 1023(b) and 29 U.S.C. § 1024(b)(1).